United States District Court
Middle District of Florida
Jacksonville Division

FILED
6-6-22
CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

Mario Godhigh
Petitioner.
Vs.
3:22-CV-619-TJC-JBT
Jose Paz & Gilberto Perez & Jair Butron.
Respondent. City of Miami Police Dep.

PETITION FOR WRIT OF MANDAMUS.

Comes Now Petitioner, Mario Godhigh
In Propria Persona pursuant to
Florida Rules of Civil Procedure
Rule 1.630 And moves this Court
to issue A Writ of Mandamus
directed toward the Respondent
this Court has Jurisdiction of
this Action under the Florida
Constitution Article V. Section
5(b) And Rule 9.030 (c)(3) of
the Florida Rules of Appellate pro
cedure.

This is A Petition for Writ of
Mandamus And Petitioner submits
the following Support Thereof.

1) Respondent Jose Paz is employed
At the City of Miami police
department. Petitioner Request
this Writ of Mandamus to be Granted
(1)

And wish that this Coorts Issue
This writ of, MANDAMUS direct
ly. toward the RESPONDENT.

1) For MAKING AN FALSE ARREST.

2) PERJURED False testimonies saying
that I told him that I WAS the
lookout why the other PERSON
WAS Committing the burglary
And GRANDtheft of CEMEX Con
Struction. Site.

3) he NEVER SAW PETITIONER with Any
thing. IN his POSSESSION

4). PETITIONER ASKING POLICE officer
why that he Lied ON him by
Saying, that I WAS the lookout
why the other PERSON WAS burgla
rizing. CEMEX CONStruction site.

5). PETITIONER ASKING POLICE officer
why that he Lied And Said that
I WAS Sitting on the Ground

6) PETITIONER ASKING POLICE officer
did he SEE ME burglarizing
Anything At All

7) PETITIONER ASKING POLICE OFFICER. WHY that he CHARGED ME With AN UNOCCUPIED BURGLARY AND GRAND theft AND ALL I WAS Going WAS JUST Riding my bicycle Going Home to my Mother

8) PETITIONER ASKING the POLICE OFFICER Why that he CHARGED ME With GRAND theft Why he FALSELY ACCUSED PETITIONER FOR HAVING 8 CEMENT Chutes FROM OFF AN CEMENT tRUCK

PETITIONER WHEREFORE REQUESTING this COURTS to ISSUE this WRIT OF MANDAMUS directly towards THE RESPONDENT AT the City OF MIAMI POLICE DEPARTMENT At ADDRESS 400 NW 2 AVENUE MIAMI, FLORIDA 33136

PETITIONER ASKING this NS COURTS to MAKE POLICE ANSWER to This And ASK this NS COURTS to QUESTION POLICE OFFICERS   Mario Godhigh

WASN'T NO PROBABLE CAUSE to STOP
ME MY MIRANDA RIGHTS WASN'T
READ TO ME AT ALL POLICE
WAS OFF DUTY POLICE POFFICER

AND PETITIONER WHEREFORE ASK
This UNITED STATES (FEDERAL COURTS
TO SERVE ALL PARTIES This MAN
DAMUS- I didn't BURGLARIZED
Anything I didn't HAVE Anything IN
MY POSSESSION AT ALL
ATTACH IS EXHIBITS

Mario Godhigh
5-31-22
DORM # E-1129 Single

And for the RECORD Public
DEFENDER, or the State
had Gotten officer Jose Paz
depossitions

Mario Godhigh M28779

**COMPLAINT/ARREST AFFIDAVIT**

141022.30965 |

POLICE CASE NO.

COURT CASE NO. **F14-23594**

| SPECIAL OPERATION: | ☑ FELONY ☐ MISO ☐ TRAFFIC ☐ JUV ☐ DV ☐ MOVES ☐ CIV INF ☐ WARRANT FUGITIVE WARRANT: ☐ In state ☐ Out of state | JAIL NO. **53302** | PMHD ☐ Yes ☑ No ☐ Unknown |
| --- | --- | --- | --- |

| IDS NO. | AGENCY CODE **01** | MUNICIPAL P.D. DEF. ID NO. | MDPD RECORDS ID NO. | STUDENT ID NO. | GANG ACTIVITY RELATED ARREST ☑ | FRAUD RELATED ARREST |

DEFENDANT'S NAME (LAST, FIRST, MIDDLE)
**GODRICH MARIO DIREL**

ALIAS and / or STREET NAME

SIGNAL: ☐ 100 ☐ 150 ☐ 200 ☐ 300 ☑ 400 ☐ 500

| DOB (MM/DD/YYYY) | AGE **36** | RACE **B** | SEX **M** | ☐ Hispanic ☑ Not Hispanic ETHNICITY **AFR** | HEIGHT **6·2** | WEIGHT **210** | HAIR COLOR **BLK** | HAIR LENGTH **SHT** | HAIR STYLE **AFR** | EYES **BRO** | GLASSES ☐ Yes ☑ No | FACIAL HAIR **ShortMo** | TEETH |

SCARS, TATTOOS, UNIQUE PHYSICAL FEATURES (Location, Type, Description) | PLACE OF BIRTH (City, State/ Country) **MIA. FL**

| LOCAL ADDRESS (Street, Apt. Number) **1160 NW 2 AVE M Y** | (City) **MIAMI,** | (State) **FL** | (Zip) **33136** | PHONE ( ) | CITIZENSHIP **U.S** |

| PERMANENT ADDRESS (Street, Apt. Number) ☐ HOMELESS ☐ UNKNOWN **SAME** | (City) | (State/Country) | (Zip) | PHONE ( ) | OCCUPATION **UNEMP** |

| ☐ BUSINESS OR ☐ SCHOOL NAME AND ADDRESS (Street) | (City) | (State/Country) | (Zip) | PHONE ( ) | ADDRESS SOURCE ☐ DL ☑ Verbal ☐ |

| DRIVER'S LICENSE NUMBER / STATE | SOCIAL SECURITY NO. | WEAPON SEIZED? Type ☐ Yes ☑ No | If Def. has Concealed Weapons Permit. PERMIT W- | INDICATION OF: Y N UNK Alcohol Influence ☐ ☑ ☐ Drug Influence: ☐ ☑ ☐ |

| ARREST DATE (MM/DD/YYYY) **10-22-14** | ARREST TIME (HHMM) **22:44** | ARR | **NW 13 AVE 20 ST** | GRID |

| CO-DEFENDANT NAME (Last, First, Middle) 1. **BUCH JEROY** | DOB (MM/DD/YYYY) **01-15-65** | ☑ IN CUSTODY ☑ FELONY ☐ JUVENILE ☐ AT LARGE ☐ DV ☐ MISDEMEANOR |
| CO-DEFENDANT NAME (Last, First, Middle) 2. | DOB (MM/DD/YYYY) | ☐ IN CUSTODY ☐ FELONY ☐ JUVENILE ☐ AT LARGE ☐ DV ☐ MISDEMEANOR |
| CO-DEFENDANT NAME (Last, First, Middle) 3. | DOB (MM/DD/YYYY) | ☐ IN CUSTODY ☐ FELONY ☐ JUVENILE ☐ AT LARGE ☐ DV ☐ MISDEMEANOR |

| JUV only | ☐ Parent (Name) ☐ Guardian ☐ Foster Care | (Street, Apt. Number) | (City) | (State/Country) | (Zip) | (Phone) | Contacted? ☐ Yes ☐ No |

| CHARGES | CHARGE AS: | COUNTS | FL STATUTE NUMBER | VIOL. OF SECT | CODE OF | UCR | DV | WARRANT TYPE OR TRAFFIC CITATION |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1. **BURGLARY UNOCC/STRUC** | ☑ F.S. ☐ ORD | 1 | **810.02** | **(4)(A)** | | | | ☐ AC ☐ CAPIAS ☐ BW ☐ PW ☐ PW ☐ JUV PU ☐ AW ☐ DVW ☐ WRIT CASE #: |
| 2. **GRAND THEFT 1,500** | ☑ F.S. ☐ ORD | 1 | **812.014** | **(2)(C)** | | | | ☐ AC ☐ CAPIAS ☐ BW ☐ PW ☐ PW ☐ JUV PU ☐ AW ☐ DVW ☐ WRIT CASE #: |
| 3. | ☐ F.S. ☐ ORD | | | | | | | ☐ AC ☐ CAPIAS ☐ BW ☐ PW ☐ PW ☐ JUV PU ☐ AW ☐ DVW ☐ WRIT CASE #: |
| 4. | ☐ F.S. ☐ ORD | | | | | | | ☐ AC ☐ CAPIAS ☐ BW ☐ PW ☐ PW ☐ JUV PU ☐ AW ☐ DVW ☐ WRIT CASE #: |

The undersigned certifies and swears that he/she has just and reasonable grounds to believe, and does believe that the above named Defendant committed the following violation of law:

On the **22** day of **OCT** , 20 **2014** , at **2230** (HHMM) at **1610 NW 21ST CEMEX CONSTRUCTION** (Location, include name of business) Narrative, be specific:

THE DEF WAS OBSERVED BY OFC. G. PEREZ 27048 RIDDING A BICYCLE
ALONGSIDE THE CO-DEF WHO WAS PUSHING A CART CONTAINING SEVERAL STEEL
SLIDES BELONGING TO A CONCRETE TRUCK. AS SOON AS OFC PEREZ APPROACHED TO
INVESTIGATE THE CO-DEF PROCEEDED TO RUN NORTHBOUND ON NW 13AVE FROM 20ST
THE CO-DEF WAS DETAINED AT NW 12AV & 21ST BY OR DIAZ 14441 THE CO-DEF
WAS I.D. BY OFC PEREZ AND RETURNED TO THE SCENE. AFTER MIRANDA RIGHTS
THE DEF STATED THAT THEY TOOK THE PROPERTY FROM THE AREA OF THE

PAGE **1** OF **2**

| HOLD FOR OTHER AGENCY Name: | VERIFIED BY | ☐ HOLD FOR BOND HEARING, DO NOT BOND OUT (Officer Must Appear at Bond Hearing) | ☐ I understand that should I willfully fail to appear before the court as required by this notice to appear that I may be held in contempt of court and a warrant for my arrest shall be issued. Furthermore, I agree that notice concerning the time, date, and place of all court hearings should be sent to the above address. I agree that it is my responsibility to notify Clerk of the Court (Juveniles notify Juvenile Division) anytime that my address changes. |
| --- | --- | --- | --- |
| I SWEAR THAT THE ABOVE STATEMENT IS TRUE AND CORRECT. | SWORN TO AND SUBSCRIBED BEFORE ME, THE UNDERSIGNED AUTHORITY THIS **23** DAY OF **SEP(OCT)** **2014** | ☐ You need not appear in court, but must comply with the instructions on the reverse side hereof. |

OFFICER'S / COMPLAINANT'S SIGNATURE

COURT ID NUMBER/LOC. CODE **5541 (22)**

NAME (Printed) **JOSE DIAZ**

AGENCY NAME **M.P.D**

Deputy of the Court or Notary Public

Signature of Defendant / Juvenile and Parent or Guardian

32.02.09-9 Rev. 04/08

(right thumb print)

COMPLAINT/ARREST AFFIDAVIT · COURT COPY

# COMPLAINT/ARREST AFFIDAVIT CONTINUATION

NUMBER

JAIL NO. **5.3382**

IDS NO.

POLICE CASE NO. **141022.309651**

COURT CASE NO. **F14-23894**

AGENCY CODE **01**   MUNICIPAL P.D. DEF. ID NO.

MDPD RECORDS AND ID NO.

DEFENDANT'S NAME (LAST, FIRST, MIDDLE)
**GODRICH MARIO DYREL**

DOB (MM/DD/YYYY)

ADDITIONAL CO-DEFENDANT NAME (Last, First, Middle)
4.

DOB (MM/DD/YYYY)

☐ IN CUSTODY ☐ FELONY ☐ JUVENILE
☐ AT LARGE ☐ DV ☐ MISDEMEANOR

ADDITIONAL CO-DEFENDANT NAME (Last, First, Middle)
5.

DOB (MM/DD/YYYY)

☐ IN CUSTODY ☐ FELONY ☐ JUVENILE
☐ AT LARGE ☐ DV ☐ MISDEMEANOR

| ADDITIONAL CHARGES | CHARGE AS: | COUNTS | FL STATUTE NUMBER | VIOL. OF SECT | CODE OF | UCR | DV | WARRANT TYPE OR TRAFFIC CITATION |
|---|---|---|---|---|---|---|---|---|
| 5. | ☐ F.S. ☐ ORD | | | | | | | ☐AC ☐CAPIAS ☐BW ☐FW ☐PW ☐JUV PU ☐AW  ☐DVW ☐WRIT  CASE #: |
| 6. | ☐ F.S. ☐ ORD | | | | | | | ☐AC ☐CAPIAS ☐BW ☐FW ☐PW ☐JUV PU ☐AW  ☐DVW ☐WRIT  CASE #: |
| 7. | ☐ F.S. ☐ ORD | | | | | | | ☐AC ☐CAPIAS ☐BW ☐FW ☐PW ☐JUV PU ☐AW  ☐DVW ☐WRIT  CASE #: |
| 8. | ☐ F.S. ☐ ORD | | | | | | | ☐AC ☐CAPIAS ☐BW ☐FW ☐PW ☐JUV PU ☐AW  ☐DVW ☐WRIT  CASE #: |

WALGREENS NW 17TH 21ST. THE DEF STATED THAT THE CO-DEF WENT THROUGH AN OPENING IN THE FENCE OF THE BUSINESS AND REMOVED THE PROPERTY AS HE WAITED OUTSIDE. AFTER MIRANDA RIGHTS THE CO-DEF GAVE THE SAME STORY EXCEPT THAT HE BLAMED THE DEF FOR GOING INTO THE PROPERTY. DEFS TRANS. TO M.P.D. & T.G.K.

NOTE: OFC J. BUTRON CHECKED THE BUSINESS AND LOCATED THE OPENING ON THE SOUTH SIDE OF THE FENCE WHICH LEADS DIRECTLY INTO THE LOT WHERE THE CONCRETE TRUCKS ARE PARKED.

PAGE 2 OF 2

HOLD FOR OTHER AGENCY

VERIFIED BY

☐ HOLD FOR BOND HEARING. DO NOT BOND OUT (Officer Must Appear at Bond Hearing).

I understand that should I wilfully fail to appear before the court as required by this notice to appear that I may be held in contempt of court and a warrant for my arrest shall be issued. Furthermore, I agree that notice concerning the time, date, and place of all court hearings should be sent to the above address. I agree that it is my responsibility to notify Clerk of the Court (Juveniles notify Juvenile Division) anytime that my address changes.

You need not appear in court, but must comply with the instructions on the reverse side hereof.

I SWEAR THAT THE ABOVE STATEMENT IS TRUE AND CORRECT.

Name:

OFFICER'S / COMPLAINANT'S SIGNATURE

COURT ID NUMBER/LOC. CODE **5551 (22)**

NAME (Printed) **TOX PM**

AGENCY NAME **M I.A**

SWORN TO AND SUBSCRIBED BEFORE ME, THE UNDERSIGNED AUTHORITY THIS **23RD**

DAY **SEPT** **2014**

Deputy of the Court or Notary Public

Signature of Defendant / Juvenile and Parent or Guardian

32.02.09-8   Rev. 05/06

 1   They do look dusty as if he did go into a

 2   construction company.

 3        MR. BOCANEGRA:  Judge, they should have taken

 4   pictures of the shoes and not of the defendant being

 5   handcuffed.

 6        THE COURT:  He was arrested, correct?

 7        MR. BOCANEGRA:  That's correct.

 8        THE COURT:  Wouldn't you assume he'd be

 9   handcuffed if he was arrested?

10        MR. BOCANEGRA:  It depends, Judge.  Sometimes

11   when we take -- when officers take someone into an

12   interview room, which is what this looks like,

13   they're unhandcuffed.

14        THE COURT:  You're not denying he was arrested

15   for the charges, correct?

16        BOCANEGRA:  No.

17        THE COURT:  All right.  The objection to that one

18   specifically is overruled.  What else do we have?

19        MR. BOCANEGRA:  What about the compound pictures.

20        MS. SOFTNESS:  Judge, we're snot planning on

21   bringing all of those.  Those are the ones that we

22   may bring in.  If they become compound during the

23   trial, I think the objection might be appropriate

24   then.  But at this time, we're not saying that we're

25   bringing in every single one of those.  We just need

Page 144

1    the option to do so.

2         MR. BOCANEGRA:  We'd like to know which ones

3    they're going to bring, Judge.  They should be able

4    to make that decision now.

5         MS. SOFTNESS:  Judge, we don't have to make that

6    decision right now.

7         THE COURT:  As they introduce them, you can make

8    your objections.

9         All right.  Anything else with regard to the

10   photographs?  So the defense is not requesting a

11   Richardson inquiry at this point in time, correct?

12        MR. BOCANEGRA:  Right.

13        THE COURT:  Motions in liminie, any?

14        MS. SOFTNESS:  Judge, I'm sorry.  There's just

15   one more thing we want to be on record, that there

16   was a report about the crime scene that was given to

17   the State this morning.  It was also given to the

18   defense.  We don't believe that there's any objection

19   at this point, but we just wanted it to be on the

20   record.

21        MR. BOCANEGRA:  We just got it ten minutes ago.

22        THE COURT:  Can I see it?

23        MS. SOFTNESS:  Sure.  Judge, we don't believe

24   that there's anything in this report that's new to

25   anyone.  Officer Paz informed us that he did testify

*Schedule*

Page 145

1  in deposition about that being existence or not

2  actually the paper itself, but the fact that crime

3  scene did go out.  So there's no knew information

4  here, we just were turning it over because it's our

5  obligation to do so.

6       THE COURT:  Okay.  And Officer Paz is, what, the

7  lead on this?

8       MS. SOFTNESS:  No, he was not.  He was just the

9  only one who gave the deposition.

10      THE COURT:  Oh, okay.  But he wasn't a crime

11  scene technician?

12      MS. SOFTNESS:  No.

13      THE COURT:  Okay.

14      MS. SOFTNESS:  But he told us he informed them

15  that someone did go out.

16      THE COURT:  Okay.  Now I have motion in liminie

17  from the defense.  Request that all sidebar

18  conference to be recorded unless we're dealing with

19  scheduling.  I don't have a problem with that.

20      Request that jurors not be kept all in the same

21  area or otherwise exposed to any witnesses in this

22  case.

23      MR. MITCHELL:  Judge, we'll stipulate to all.

24      THE COURT:  What do you mean not kept in the same

25  area?  They're going to be kept on the second floor,

1    but they're kept down at the other end.  So just keep

2    your witnesses away from them.

3         MR. BOCANEGRA:  That's fine, Judge.

4         THE COURT:  All right.

5         MR. BOCANEGRA:  As long as they're not together.

6         THE COURT:  Defendant invokes the rule, okay.

7         You don't want to be referred as a public

8    defender.  I actually thought I took great pains

9    yesterday to not disclose that when we were talking

10   with our one juror who is with your office.

11        No witness should be permitted to express his or

12   her opinion regarding the defendant's guilt.  That's

13   also granted.

14        Exclude any testimony about statements made by

15   parties who are not testifying in this case.  Such

16   evidence -- such statements are inadmissible hearsay.

17   Additionally, admitting testimony hearsay in the

18   evidence about -- that's deferred until I hear it or

19   don't hear it; until I hear the questions or until I

20   hear the part of the statement.

21        Exclude any testimony concerning investigative

22   procedures conducted based on information received

23   from none testifying parties.  We're talking about

24   inferential hearsay.  That's deferred until I hear

25   what it is too.

1          Exclude evidence of prior, subsequent crimes,

2     wrongs, or acts unless open the door.  I'm assuming

3     there's no objection to that, State.

4          MS. SOFTNESS:  No objection.

5          THE COURT:  Any testimony by officers as to

6     contained statements that they received in dispatch

7     or via radio communication from another officer

8     should be excluded as hearsay.  That's deferred at

9     this point, because to the extent that there's some

10    information that might fall within the fellow officer

11    rule, I don't have a problem with it depending upon

12    what it is.

13          Likewise, I guess the State will be moving in

14    liminie on the statements not in police reports or

15    something like that?

16          MS. SOFTNESS:  Yes.

17          THE COURT:  Okay.  The only reason I suggest that

18    is I know that Mr. Bocanegra with his wealth of

19    knowledge of 30 years on the police force and

20    policies and procedures his want to utilize that in

21    front of a jury at times or in front of a fact finder

22    in questioning witnesses, I would just caution him

23    against that at this point.

24          MR. BOCANEGRA:  I'm sorry, Judge, what was

25    your -- or what is the State's motion in liminie?

1      MS. SOFTNESS:  Judge, the State would renew its

2   motion in liminie from yesterday asking --

3      THE COURT:  We did do that yesterday, didn't we?

4      MS. SOFTNESS:  We did.  I'm just asking that the

5   Court order defense not to talk about their personal

6   experience in law enforcement during the pendency of

7   this case to the jury.

8      THE COURT:  Okay.  Any other matters?

9      MS. SOFTNESS:  None from the State.

10      THE COURT:  Defense?

11      MR. BOCANEGRA:  No.

12      THE COURT:  Okay.  Line up our jury, Ralph.

13      THE BAILIFF:  All rise for the jury, please.

14      (Thereupon, the jury enters the courtroom, after

15   which the proceedings continued as follows:)

16      THE BAILIFF:  All present and accounted for,

17   Judge.

18      THE COURT:  All right.  Be seated, please.

19   Welcome back, members of my jury.

20      All right, ladies and gentlemen of the jury, you

21   have been selected and sworn as the jury to try the

22   case of the State of Florida versus Mario Godhigh.

23   This is a criminal case.  Mario Godhigh is charged

24   with burglary of an unoccupied structure and grand

25   theft.  The definition of the elements of those

*Biding*

Page 153

1    yours and yours alone as to whether you wish to take

2    notes.  At this point we'll proceed to opening.

3         State, you may proceed.

4         MR. MITCHELL:  Yes, Your Honor.  May it please

5    the court, counsel, members of the jury.

6         Ladies and gentlemen, we are here today because

7    of a three-point plan.  Stealthy entry, steal the

8    goods, get out and sell to make some money.  We are

9    here today because on October 22, 2014, this

10   defendant, Mario Godhigh, committed two crimes.

11   Number one, burglary as principal when he stealthily

12   entered the Cemex Construction Corporation on 21st

13   Terrace, got inside with the intent to steal goods

14   from inside that plant.  Number two, again as a

15   principal, grand theft, when he knowingly and

16   unlawfully stole those goods with the intent to

17   permanently or temporarily deprive that owner or

18   custody of the right to those goods.  So what

19   actually happened on October 22, 2014?  Well, the

20   evidence we're going to bring you is going to show

21   the following.

22        It's about 11 o'clock at night, and I want each

23   and every one of the jurors in this case, ladies and

24   gentlemen, to understand.  Picture a scene.  We've

25   got on 21st Terrace, a construction company.  Now to

Page 154

1    set the scene, the construction company is fully

2    enclosed.  It's got a structure inside the premises,

3    you can see the building, and it's got a parking lot

4    with a number of cement trucks that are parked

5    throughout this particular property.

6         You're going to first hear from Officer Perez of

7    the City of Miami Police Department.  What is he

8    going to tell you?  He's going to tell you at about

9    11 o'clock at night, this is what he sees.  About

10   four blocks away from this location, a construction

11   company seen on 21st, he sees two men in the middle

12   of the street.  One of the men is pushing a cart with

13   what Officer Perez will tell you looks like those

14   cement chutes that -- just to understand a little bit

15   of what that is, it's an actual apparatus that this

16   company uses and it hooks onto the back of the cement

17   mixing trucks that actually allows the cement to be

18   flowed through the mixture to the actual ground.  So

19   he sees in the middle of the street, again, four

20   blocks away, these two men pushing a cart with these

21   chutes inside the cart.  And then he sees the

22   defendant with this particular man riding a bicycle.

23   They're together, driving down the middle of the

24   street.

25        Now, understand, Officer Perez is going to

Page 159

1   confession.  He made a confession to the police.  The

2   police walked up and he said, hey, you know what, you

3   know, we took these items, we stole these items, yes,

4   we did, yes, I did, I took the items along with Jerry

5   Bunch.  That's really the only evidence they have.

6   The only evidence that they're going to present that

7   links Mario Godhigh to this incident is his statement

8   to the police.  What will you not see?

9       Well, you will not see that that statement is

10  recorded in any sort of tape recording or other type

11  of recording.  You will not see that the statement

12  was written, written on a piece of paper the

13  so-called confession was written down, signed by

14  Mario Godhigh.  You'll just hear the words of the

15  police officer, who say, yeah, he said it, he

16  admitted it; he admitted it; he said, yeah, I did it,

17  I stole it along with Mr. Jerry Bunch.  That's the

18  only evidence you're really going to hear.  Now, you

19  will not see video.  You will not see DNA.  You will

20  not see fingerprints.  You will not hear that

21  fingerprints were taken or that there was even an

22  attempt to take fingerprints anywhere or that Mario

23  Godhigh's fingerprints were on these items or were on

24  the cart or were in the area where the items were

25  stolen.  You will see none of that.  The State may

ANALYSIS

Page 160

1    even present a photograph of Mario Godhigh and show

2    you his shoes and say, look at those dirty shoes, why

3    that must be cement dust on the dirty shoes, look at

4    those dirty shoes, that's cement dust.  That shows he

5    was, you know, at this place, because it's a cement

6    place, those dirty shoes, oh, that's cement dust.

7    That's what they may say, but what won't they have.

8        They won't have anybody from the Miami-Dade crime

9    scene bureau give you any type of chemical analysis

10   of those shoes or the dust on the shoes and come in

11   and say, yes, we have studied those shoes, we've

12   scraped off the dust, we put it to analysis, it is

13   cement dust.  We're not hearing any of that.  You may

14   just hear evidence that cause you to speculate.  At

15   the end of the day, you're going to find that the

16   evidence against Mr. Mario Godhigh is weak, very

17   weak.

18        MR. MITCHELL:  Objection as to argument.

19        THE COURT:  Sustained.

20        MR. RAUCHER:  And you're going to come to the

21   conclusion and the only conclusion that you can come

22   to is that Mario Godhigh is not guilty, and the State

23   has not proven its case beyond a reasonable doubt.

24        Thank you.

25        THE COURT:  All right.  State, call your first

Page 149

1   crimes will be explained to you later.  It's your

2   solemn responsibility to determine if the State has

3   proved its accusation beyond a reasonable doubt

4   against Mr. Godhigh.  Your verdict must be based

5   solely on the evidence, or lack of evidence, and the

6   law.  The information that I read to you yesterday is

7   not evidence and it is not to be considered by you as

8   any proof of guilt.

9       It's the judge's responsibility to decide which

10  laws apply to this case and to explain those laws to

11  you.  It's your responsibility to decide what the

12  fact of this case may be and to apply the law to

13  those facts.  Thus, the province of the jury and the

14  province of the court are well defined and they do

15  not overlap.  This is one of the fundamental

16  principles of our system of justice.  Before

17  proceeding further, it'll be helpful if you

18  understand how a trial is conducted.

19      At the beginning of the trial, the attorneys will

20  have an opportunity, if they wish, to make an opening

21  statement.  The opening statement gives the attorneys

22  a chance to tell you what evidence they believe will

23  be presented during the trial.  What the lawyers say

24  is not evidence, and you're not to consider it as

25  such.  Following the opening statements witnesses

Page 150

1   will be called to testify under oath.  They'll be

2   examined and cross-examined by the attorneys.

3   Documents and other exhibits also may be produced as

4   evidence.  After the evidence has been presented, the

5   attorneys will have the opportunity to make their

6   final argument.  Following the arguments by the

7   attorneys, the court will instruct you on the law

8   applicable to the case.  After the instructions are

9   given, you will then retire to consider your verdict.

10  You should not form any definite or fixed opinion on

11  the merits of the case until you've heard all the

12  evidence, the argument of the lawyers, and the

13  instructions on the law by the judge.  Until that

14  time you should not discuss the case among

15  yourselves.

16      During the course of the trial the court may take

17  recesses, during which you'll be permitted to

18  separate and go about your personal affairs.  During

19  these recesses you will not discuss the case with

20  anyone nor permit anyone to say anything to you or in

21  your presence about the case.  If anyone attempts to

22  say anything to you or in your presence about this

23  case, tell them that you're on the jury trying the

24  case and ask them to stop.  If they persist, leave

25  them at once and immediately report the matter to the

Page 179

1          MR. BOCANEGRA:  Thank you, Judge.

2                    CROSS-EXAMINATION

3   BY MR. BOCANEGRA:

4      Q.    Good afternoon, Officer.

5      A.    Good afternoon.

6      Q.    It was good morning before, and now it's

7   afternoon.

8      A.    Yes, sir.

9      Q.    All right.  Officer, so you observed the

10  defendant riding a bicycle?

11     A.    He was pushing a bicycle.  He was walking next to

12  it.

13     Q.    He was pushing a bicycle?

14     A.    Correct.

15     Q.    All right.  But before, you made a statement that

16  he was riding a bicycle; is that correct?

17     A.    I went over the depo and I did say that.  Later

18  on I -- I fixed it.

19     Q.    Okay.  Now, you never saw where he was coming

20  from, did you?

21     A.    I saw him.  They were both walking eastbound on

22  20th Street.

23     Q.    Right.  But you don't know where they were coming

24  from, you just say saw them walking eastbound?

25     A.    Correct.

Page 180

1    Q.    And when you saw Mr. Godhigh, there was a second

2    individual there, correct?

3    A.    Yes, there was.

4    Q.    And that individual was pulling cart or pushing a

5    cart rather?

6    A.    Pushing a cart.

7    Q.    All right.  And what did the cart have in it?

8    A.    It had construction slides from a construction

9    truck.

10    Q.    Okay.  And what does that do, those slides?

11    A.    Those big construction trucks that you see with,

12    like, a huge turbine thing in the back, the construction

13    spins and then it slides to the rear and then it

14    eventually ends up at whatever location they're going to

15    do the cement.

16    Q.    All right.  So these things were on that cart,

17    correct?

18    A.    Correct.

19    Q.    The cart that the other individual, the other

20    black man was pushing; is that correct?

21    A.    Yes.

22    Q.    Now you never saw Mr. Godhigh in possession of

23    any of that, correct?

24    A.    He was right next to the individual, walking

25    alongside him.

Page 181

1    **Q.**   Correct.  But he was never in possession of it?

2    **A.**   Was he?

3    **Q.**   You never observed him in possession?

4    **A.**   The question, was he pushing the cart?

5    **Q.**   The question is was he in possession, physical

6    possession of the cart or any of the items that were in

7    the cart?

8    **A.**   I believe they were both in possession of it.

9    **Q.**   And how did you arrive at that?

10   **A.**   They were both -- by the statements he made later

11   and by him being right next to --

12   **Q.**   I'm not asking about all the statements he made

13   later.  I'm asking what are your observations, about

14   your -- specifically your observations.  When you saw

15   Mr. Godhigh, did he have -- he was riding a bicycle or

16   walking a bicycle, correct?

17   **A.**   Correct.

18   **Q.**   So he was never in possession of the cart,

19   correct?

20   **A.**   He was standing right next to the other

21   individual and they were both together.  So I believe he

22   did have possession of the property.

23   **Q.**   So that's your definition of somebody being in

24   possession, when they're standing next to someone; is that

25   correct?

Page 182

1    A.    They were together.

2          MS. SOFTNESS:  Objection:  Asking the officer to

3    make a legal conclusion and confusing.

4          THE COURT:  Sustained.  Next question.

5    (BY MR. BOCANEGRA)

6    Q.    The items.  Did you ever see him in possession of

7    the items?

8    A.    No.

9    Q.    Or was he just walking next to it riding his

10   bicycle or walking his bicycle?

11   A.    He was not carrying any of the items.

12   Q.    Okay.  So you stopped to investigate, right?

13   A.    Correct.

14   Q.    Now you're a burglary detective?

15   A.    Correct.

16   Q.    And you were in an unmarked car, correct?

17   A.    Yes, I was.

18   Q.    All right.  And were you wearing a regular class

19   B uniform or were you wearing the uniform you're wearing

20   now?

21   A.    I was wearing a regular class B uniform with a

22   badge and seal.

23   Q.    All right.  And that was, because you're a

24   detective, why were you wearing that?  Was that because

25   you were working an off-duty job?

Page 259

1    MS. SOFTNESS:  Okay.

2    THE COURT:  It's lawful to enter or remain in a

3    structure of another, if, under all the circumstances

4    a reasonable person would believe he had the

5    permission of the owner or occupant.  And then for

6    definitions, we'll leave persons authorized in there.

7    Willfully, we'll leave in there.  Structure, we'll

8    leave in there.

9    MS. SOFTNESS:  The whole next page.

10   THE COURT:  The whole next page is out.  While

11   armed, human body, firearm, dangerous weapon.

12   MR. BOCANEGRA:  That's coming out?

13   THE COURT:  That's all coming out.  Theft, we're

14   on to now.  Of course, most of this comes out as

15   opposed to staying in.  And you don't have the

16   Principal instruction in here.

17   MS. SOFTNESS:  Yeah, I do.  Right here.

18   THE COURT:  Where?

19   MR. BOCANEGRA:  It's in the beginning.

20   THE COURT:  It was?

21   MR. BOCANEGRA:  Yes.

22   MS. SOFTNESS:  Right here.

23   THE COURT:  My bad.  Theft.  To prove the crime

24   of grand theft, the State must prove the following

25   two elements beyond a reasonable doubt.  I don't like

Page 260

1    the grand theft in there.  Just leave it theft.

2         MS. SOFTNESS:  We can take it out.

3         THE COURT:  To prove the crime of theft.

4    Knowingly and unlawfully obtained or used.

5         MS. SOFTNESS:  Can we cross auto the word used.

6         THE COURT:  We can.  Obtained.

7         MS. SOFTNESS:  Cross out endeavored to obtain or

8    use.

9         THE COURT:  Endeavored to obtain or use.

10        MS. SOFTNESS:  Construction materials -- or

11   what's in the Information?

12        MR. BOCANEGRA:  Why would we take out the use?

13        MS. SOFTNESS:  Because he didn't use them.  He

14   only obtained them.  There's no evidence of him using

15   them.

16        MR. BOCANEGRA:  Okay.

17        THE COURT:  So here on (1) the property alleged

18   would be cement chutes.

19        MS. SOFTNESS:  I just want to say construction

20   materials but that's not what's in the Information.

21        THE COURT:  Cement chutes and/or a battery box

22   and/or a drum cable control.  All right.  The drum

23   cable control is that external.

24        MS. SOFTNESS:  He calls it a pendulum.

25        THE COURT:  Yeah.  But they have them on trash